**EAGLE HEALTHCARE, INC. and Hope Care, Inc., Plaintiffs,**

v.

**Kathleen SEBELIUS, Secretary Department of Health and Human Services, Defendant.**

Case No. 1:09–cv–00291 (BJR), Case No. 1:09–cv–00292 (BJR), Case No. 1:09–cv–00293 (BJR), Case No. 1:09–cv–02118 (BJR), Case No. 1:09–cv–02119 (BJR)

United States District Court, District of Columbia.

Filed October 10, 2013

James P. Holloway, Susan Ann Turner, Ober Kaler Grimes & Shriver, PC, Washington, DC, for Plaintiffs.

Mitchell P. Zeff, Jeremy S. Simon, U.S. Attorney's Office, Washington, DC, for Defendant.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

BARBARA JACOBS ROTHSTEIN, U.S. District Court Judge

## I. INTRODUCTION

These five consolidated cases arise under the Medicare provisions of the Social Security Act. In each case, Plaintiffs, Eagle Healthcare, Inc. ("Eagle") and/or Hope Care, Inc. ("Hope") (collectively, the "Plaintiffs"), filed substantially identical Complaints whereby they challenge the Centers of Medicare & Medicaid Services' ("CMS") authority to recoup alleged Medicare overpayments from the Plaintiffs. Dkt. No. 1.[1] The Complaints contain three counts. In Counts I and II, Plaintiffs challenge the Medicare fiscal intermediary's ("FI") overpayment determinations. In Count III, Plaintiffs challenge the Provider Reimbursement Review Board's (the "PRRB") determination that it lacks jurisdiction to review Plaintiffs' challenge to the FI's overpayment determinations.

Currently before the Court is Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment filed by Kathleen Sebelius, Secretary of the Department of Health and Human Services (the "Secretary" or "Defendant") (Dkt. No. 20 "Mot."). The Secretary moves to dismiss Counts I and II, arguing that the FI's overpayment determinations do not constitute final agency decisions within the meaning of the Administrative Procedures Act ("APA"), and as such, are not subject to judicial review. The Secretary also moves to dismiss Count III, arguing that

---

1. The parties filed identical motions and responsive pleadings in each of the five consolidated cases. For the sake of efficiency, the Court will only cite to the pleadings in Case No. 09–cv–00291.

the PRRB's jurisdictional determination is correct as a matter of law, and therefore, must be affirmed by this Court.

Because this Court determines that the FI's overpayment determinations are not final agency decisions, and thereby not subject to judicial review, Counts I and II are DISMISSED. In addition, because this Court's review of the Secretary's final decision is limited to the PRRB's jurisdictional determination, and this Court hereby affirms the jurisdictional determination, Count III is DISMISSED. The reasoning for the Court's ruling is set forth below.[2]

## II. REGULATORY BACKGROUND

These cases arise under Title XVIII of the Social Security Act, which establishes a program of health insurance for the aged and disabled, commonly known as "Medicare." 42 U.S.C. §§ 1395–1395iii. In general, the federal government, through the Medicare program, reimburses Medicare-certified healthcare facilities for services provided to Medicare beneficiaries. In order to be Medicare-certified, a healthcare facility must obtain a Health Insurance Benefit Agreement (commonly referred to as a "Provider Agreement") from the Centers of Medicare & Medicaid Services ("CMS").[3] 42 U.S.C. § 1395cc. The certification process enables CMS to ensure that Medicare beneficiaries are served by qualified healthcare providers. 42 C.F.R., Part 483.

A Provider Agreement may be transferred if there is a "change of ownership" of a Medicare-certified healthcare facility. 42 C.F.R. § 489.18. When CMS determines that there has been a valid change of ownership, the existing Provider Agreement is automatically assigned to the new owner, effective on the date of transfer, unless the new owner rejects that assignment. 42 C.F.R. § 489.18(c). An assigned Provider Agreement is subject to all of the terms and conditions under which it was originally issued. 42 C.F.R. § 489.18(d); *United States v. Vernon Home Health, Inc.*, 21 F.3d 693, 696 (5th Cir.), *cert. denied*, 513 U.S. 1015, 115 S.Ct. 575, 130 L.Ed.2d 491 (1994).

The assignee of a Provider Agreement is not required to prove that it meets the initial Medicare certification requirements. *Vernon*, 21 F.3d at 696. This is because the new owner is merely stepping into the shoes of the prior owner—the healthcare facility remains the same. *Id.*; 42 C.F.R. § 489.18(d). If, however, the new owner rejects the assignment, the prior owner's Provider Agreement terminates and the new owner must seek to enter the Medicare program as a new applicant. 42 C.F.R. § 489.10.

As discussed above, the Federal government, through Medicare, pays Medicare-certified healthcare facilities for services rendered to Medicare beneficiaries. *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 91, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995); 42 U.S.C. §§ 1395g and 1395h. These payments are made through fiscal intermediaries ("FI") that serve under contract with CMS. § 1395h. At the end of each fiscal year, the healthcare facility is required to submit a cost report to the FI that sets forth the Medicare costs the facility incurred during that year. 42 C.F.R.

---

2. The Plaintiff in each of the consolidated cases also moved for summary judgment after the Secretary filed her motion to dismiss. *See, e.g.,* Dkt. No. 24. Because this Court is granting Defendant's motion to dismiss, the Court will strike Plaintiffs' motions for summary judgment.

3. CMS is a federal agency within the United States Department of Health and Human Services ("HHS"). HHS delegated the authority to CMS to administer the Medicare program on behalf of HHS.

§§ 413.20; 413.24(f). The FI audits the cost report and issues a Notice of Program Reimbursement ("NPR"), indicating the amount of Medicare reimbursement due to the facility for that fiscal year. 42 C.F.R. §§ 413.60, 405.1803.

For the years at issue in these cases, the amount of Medicare reimbursement a healthcare facility received was based primarily on the facility's actual "reasonable costs" incurred in serving Medicare beneficiaries. *Guernsey Mem'l Hosp.*, 514 U.S. at 91, 115 S.Ct. 1232 (citing 42 U.S.C. § 1395x(v)(1)(A)). Because actual reasonable costs cannot be determined until after the close of the fiscal year, the healthcare facility's FI makes estimated payments to the facility at least once a month. 42 U.S.C. § 1395g(a). The FI is required to adjust these payments when necessary so that the payments most closely approximate the amount of reimbursement actually due to the facility. *Id.*; 42 C.F.R. § 413.64(b).

After a healthcare facility's cost report is audited by the FI, the interim payments made to the facility throughout the year are offset against the total amount that the FI determines is due based on the facility's actual reasonable costs for that fiscal year. 42 U.S.C. §§ 1395g(a); 1395x(v)(1)(A)(ii). If the NPR shows that the total of the interim payments received throughout the year was less than the amount determined to be due after audit, the Medicare program owes the facility the difference; if the NPR shows that the total of the interim payments received throughout the year was more than the amount determined to be due after audit, the facility owes the difference to the Medicare program. *Id.*

A healthcare facility may challenge the FI's NPR determination by filing an administrative appeal with the Provider Reimbursement Review Board ("PRRB").

42 U.S.C. § 1395oo(a)(1). Decisions of the PRRB may be reviewed by the Administrator of CMS. The final decision of the CMS Administrator, or the PRRB's decision (if not reviewed by CMS) is subject to judicial review and may be set aside under the terms of the Administrative Procedure Act ("APA"). *Richney Manor, Inc. v. Schweiker*, 684 F.2d 130, 133–34 (D.C.Cir. 1982).

## III. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs own and operate five Medicare-certified skilled nursing facilities located in Washington State. (Dkt. No. 1 "Comp." at ¶ 2). The nursing facilities were at one time owned by Sun Healthcare Group, Inc. ("Sun"). *Id.* at ¶ 18. In August, 1999, Sun and Plaintiffs entered into transfer agreements, pursuant to which the operational and financial responsibility for the five nursing facilities was transferred from Sun to Plaintiffs. *Id* at ¶ 19. Thereafter, on October 14, 1999, Sun and approximately 185 of Sun's subsidiaries filed for bankruptcy protection in the District of Delaware. *Id.* at ¶ 20; Mot. at 10. On May 18, 2000, CMS processed Plaintiffs' change of ownership application and assigned Sun's Medicare Provider Agreements for the five nursing facilities to Plaintiffs with a retroactive effective date of December 1, 1999. Comp. at ¶ 22.

At some point after Sun filed for bankruptcy protection, CMS determined that Sun, while it operated the nursing facilities, was overpaid by its FI for certain fiscal years, and underpaid for other fiscal years. Comp.; Ex. 1 at 13. Sun and CMS decided to "avoid the administrative and litigation expenses associated with resolving the amounts due between Sun and [CMS] arising from the routine administration of the Medicare program ... and thus agree[d] to liquidate and settle such

amounts." *Id.* at 14. To that end, on or about February 5, 2002, CMS and Sun (as well as other third parties unrelated to this action) entered into a settlement agreement whereby "Sun and CMS [ ] mutually release[d] each other from any Medicare claims ... relating to the Sun Entities' participation in the Medicare program through October 13, 1999" (the "Settlement Agreement"). *Id.* at 19. The Settlement Agreement also states that "such release of claims shall not be construed to release CMS' rights, if any, against transferees of such provider agreements." *Id.* at 16. The Settlement Agreement further states that it shall be "binding on all successors, transferees, heirs, and assigns of the Parties" and is intended for the "benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in [provisions unrelated to this dispute]." *Id.* at 40 and 44.

On January 11, 2002, the above Settlement Agreement was presented to U.S. Bankruptcy Judge Mary F. Walrath for approval pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. Dkt. No. 22; Ex. 25. Judge Walrath granted the requested approval on February 8, 2002, and Sun and its Entities were authorized to implement the Settlement Agreement. *Id.* at 2. In granting approval, Judge Walrath expressly stated that she "retains jurisdiction over any and all disputes, controversies, claims or other matters arising under or otherwise relating to this Order, including, without limitation, the terms of the Settlement Agreement." *Id.* at 3, ¶ 5.

Approximately three years after CMS and the Sun Entities entered into the Settlement Agreement, CMS notified Plaintiffs that the nursing facilities, while owned by Sun, had been overpaid by Medicare. Thereafter, the FI recouped the alleged overpayments from Plaintiffs.[4] Plaintiffs appealed to the PRRB. In letters dated December 12, 2008 and September 11, 2009, the PRRB dismissed Plaintiffs' appeals. The PRRB determined that it lacks jurisdiction over the appeals because Plaintiffs requested that the PRRB review "actions taken by CMS ... regarding compromise of an overpayment claim or termination or suspension of an overpayment," but the PRRB is precluded from reviewing "such actions" by 42 C.F.R. §§ 405.1801(a)(4),. 405.376(j) and 401.625. Comp., Ex. 4 at 3.

Plaintiffs timely filed the instant complaints in the United States District Court for the District of Columbia. The complaints state three substantially identical claims: (1) Count 1: the FI's determination that Plaintiffs owed overpayments to CMS violated the Settlement Agreement between CMS and the Sun Entities, and is therefore arbitrary, capricious, not in accordance with the law, and in excess of the FI's authority; (2) Count II: the FI determined that Plaintiffs owed overpayment to CMS without first issuing NPRs, or based the determination on untimely NPRs, and is thereby arbitrary, capricious, not in accordance with the law, and in excess of the FI's authority; and (3) Count III: the PRRB's determination that it lacked jurisdiction over Plaintiffs' appeals is arbitrary, capricious, and not in accordance with the law.

In February 2010, Defendant moved to dismiss Plaintiffs' claims, or in the alternative, for summary judgment. Also in February 2010, Plaintiffs moved for summary

---

**4.** The Parties dispute the amount of overpayment at issue in this litigation. Defendant alleges that it is less than $100,000. Dkt. No. 27 at 2 fn. 4. Plaintiffs allege that the overpayments are in excess of $400,000.

judgment on their claims. On July 23, 2010, United States District Chief Court Judge Richard W. Roberts granted the parties' joint motion to consolidate the five pending cases. Dkt. No. 29. The consolidated cases were reassigned to this Judge on July 15, 2013. Dkt. No. 30. The motions are ripe and review for this Court's review.

## IV. STANDARD OF REVIEW

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a claim must be dismissed if a district court lacks subject-matter jurisdiction to entertain the claim. Fed. R. Civ. P. 12(b)(1). In deciding a motion to dismiss under Rule 12(b)(1), a court must "accept as true all of the factual allegations contained in the complaint" and draw all reasonable inferences in favor of the plaintiff, *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C.Cir. 2008), but courts are "not required ... to accept inferences unsupported by the facts or legal conclusions that are cast as factual allegations," *Rann v. Chao*, 154 F.Supp.2d 61, 64 (D.D.C.2001). Further, the "court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F.Supp.2d 18, 22 (D.D.C.2000) (citing *Herbert v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C.Cir.1992)).

A motion to dismiss pursuant to Federal Rule 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C.Cir.2002). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted). The court must treat the complaint's factual allegations as true, drawing all reasonable inferences in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C.Cir.2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C.Cir.2003). In deciding a 12(b)(6) motion, the court "may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave–Schmidt v. Chao*, 226 F.Supp.2d 191, 196 (D.D.C.2002) (citation omitted) (citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C.Cir.1997).

## V. DISCUSSION

As discussed above, Plaintiffs appealed the FI's overpayment determinations to the PRRB, arguing that CMS should not be allowed to recoup the alleged overpayments because "the settlement between Sun and [CMS] extinguished any and all overpayments that may have been due under the cost reports" in question. Comp., Ex. 1 at 2. In two decisions issued on December 12, 2008 and September 11, 2009, the PRRB concluded that it lacks jurisdiction over Plaintiffs' appeals and dismissed the cases. The PRRB based its jurisdictional determination on regulations 42 C.F.R. §§ 405.1801(a)(4), 405.376(j), and 401.625, which, according to the PRRB, preclude it from reviewing actions taken by CMS to compromise, terminate, or suspend an overpayment claim.[5] Because the

---

5. In the decisions, the PRRB noted that it had previously reached the same conclusion in

*Heritage Health Care, Inc. v. Mutual of Omaha*, 1998 WL 34194938 (PRRB Decision

PRRB determined that it does not have jurisdiction over Plaintiffs' appeals, it dismissed them without addressing the merits of Plaintiffs' challenges to the FI's overpayment determinations.

■ Here, Plaintiffs challenge the PRRB's jurisdictional determination, arguing that it is arbitrary, capricious, and contrary to the law. However, Plaintiffs never meet head on the PRRB's conclusion that 42 C.F.R. §§ 405.1801(a)(4), 405.376(j), and 401.625 prohibit it from reviewing Plaintiffs' appeals; indeed, Plaintiffs never address, let alone challenge, the PRRB's interpretation of these regulations. Instead, Plaintiffs invoke 42 U.S.C. § 1395oo(f)(1) to argue that because the PRRB has determined that it does not have jurisdiction to review Plaintiffs' appeals, this Court is authorized to review the merits of Plaintiffs' challenges to the FI's overpayment determinations. *Id.* at 13. Section 1395oo(f)(1) allows a provider to obtain expedited judicial review of any action by a FI that involves a question of law, so long as the PRRB has determined that it is "without authority to decide the question." In Plaintiffs' view, the PRRB's determination that it does not have jurisdiction to review the FI's overpayment determinations is tantamount to the PRRB declaring that it is "without authority to decide the question." Pl's. Opp. at 8. Therefore, according to Plaintiffs, this Court may reach the merits of their challenges to the FI's overpayment determinations.

Plaintiffs' argument fails for at least two reasons. First, in order for a provider to obtain expedited judicial review pursuant to Section 1395oo(f)(1), the PRRB must first determine that it *has* jurisdiction over the provider's claim. *See* 42 C.F.R. 405.1842(f)(1)(ii) and (f)(2)(i) (noting that the PRRB must find that it has jurisdiction before it can issue a petition for expedited judicial review, and conversely, must deny a request for expedited judicial review if the PRRB determines that it does not have jurisdiction to conduct a hearing on the specific matter at issue). *Accord, Three Lower Counties Community Services v. U.S. Dep't of Health and Human Servs.*, 517 F.Supp.2d 431, 435, n. 4 (D.D.C.2007) (citing *Anaheim Memorial Hosp. v. Shalala,* 130 F.3d 845, 848 (9th Cir.1997) (PRRB grants a petition for expedited judicial review when it decides that it has jurisdiction over an appeal but lacks authority to decide the controlling question of law). Here, the PRRB expressly determined that it does *not* have jurisdiction over Plaintiffs' appeal.

Second, contrary to Plaintiffs' position, the PRRB has not determined that it is "without authority" to decide Plaintiffs' appeal. Plaintiffs argue that the PRRB's jurisdictional finding is tantamount to the PRRB "declar[ing] that it lacks authority to review the FI's recoupment." Pl's Opp. at 8. This argument erroneously conflates "authority to decide the question" and "jurisdiction to take any legal action in the matter." These are two separate and distinct concepts. The former asks whether the PRRB has authority to reach the mer-

`No.2004–D9, June 30 1998). In that case, the appellant, Heritage, acquired a healthcare facility; thereafter, CMS moved to recoup from Heritage overpayments incurred by the prior owner of the healthcare facility. CMS argued that Heritage, having accepted assignment of the prior owner's Provider Agreement, was responsible for the overpayments. *Id.* Heritage appealed to the PRRB to stop CMS'

recoupment efforts, arguing that the overpayments were discharged in the bankruptcy proceeding of the prior owner. *Id.* The PRRB determined that it lacked jurisdiction to hear the appeal of the recoupment action "because [recoupment actions] are specifically excluded from the [PRRB's] authority." *Id.* (citing 42 C.F.R. §§ 405.1801(a)(4), 405.376(j), and 401.625).

its of Plaintiffs' claims, whereas the latter asks whether Plaintiffs "may obtain a hearing" at all. *See Cape Cod Hospital v. Leavitt*, 565 F.Supp.2d 137, 141 (D.D.C. 2008) (Lamberth) ("Though plaintiffs believe that 'authority to decide the question' and 'jurisdiction to take any legal action in the matter' are one and the same, this is simply not the case").[6] Accordingly, because the PRRB has determined that it does not have jurisdiction over Plaintiffs' appeal, and because the PRRB has not determined that it is without authority to decide the question at hand, expedited judicial review pursuant to Section 1395oo(f)(1) is not available to Plaintiffs.

Because Section 1395oo(f)(1) is not applicable to this case, this Court cannot reach the merits of Plaintiffs' appeals. Instead, this Court must limit its review to the PRRB's jurisdictional determination. *See, e.g., Good Samaritan Hosp. Regional Medical Center v. Shalala*, 85 F.3d 1057, 1062 (2d Cir.1996) (noting that "because the only final decision reached by the PRRB was that it lacked jurisdiction to review [the FI's determination], the district court was limited to reviewing this decision and did not have jurisdiction to review the merits of [the FI's determination]"); *see also, Lutheran Medical Center v. Thompson*, 2006 WL 2853870, *4 (E.D.N.Y. Oct. 2, 2006) ("The only final decision of the [PRRB] at issue is its dismissal of [the provider's] appeal . . . [t]he merits of the underlying reimbursement decision, which the [PRRB] did not address, are not before this Court"); *Saline Community Hosp. Ass'n v. Secretary of HHS*, 744 F.2d 517, 520 (6th Cir.1984) ("the district court's scope of review could not extend beyond the PRRB's conclusion

that it lacked jurisdiction; that is, the district court could not rule on the *merits* of the claim over which the [PRRB] declared it lacked jurisdiction, only on whether the [PRRB's] jurisdictional decision was correct") (emphasis in original); *St. Vincent Health Ctr. v. Shalala*, 937 F.Supp. 496, 503 (W.D.Pa.1995) ("The PRRB's only decision in this case—and therefore the sole issue for review here—was that it lacked jurisdiction to review Blue Cross's decision") *aff'd* 96 F.3d 1434 (1996).

However, as noted earlier in this order, Plaintiffs do not address, let alone challenge, the basis of the PRRB's jurisdictional determination—that the Secretary's regulations prohibit the PRRB from reviewing Plaintiffs' appeals. Instead, Plaintiffs rely on Section 1395oo(f)(1) to argue that this Court has jurisdiction to review the merits of the appeals. That being the only argument Plaintiffs offer in response the government's and the PRRB's position that the Secretary's regulations preclude the PRRB's jurisdiction, and this Court having determined that Section 1395oo(f)(1) is not applicable to this case, the Court affirms the PRRB's jurisdictional determination and dismisses Count III. *See Hopkins v. Women's Div. General Bd. of Global Ministries*, 284 F.Supp.2d 15, 25 (D.D.C.2003) (citations omitted) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that plaintiff failed to address as conceded.") *aff'd* 98 Fed.Appx. 8 (D.C.Cir.2004).

Next, Defendant moves to dismiss Counts I and II, arguing that this Court

---

**6.** Section 1395oo(f)(1) comes into play in situations where a provider's challenge to the action of a FI involves a strictly legal question, such as a claim that a regulation is inconsistent with the Medicare Statute. *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638

F.3d 644, 652 (9th Cir.2011) (citing *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 406, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988)) ("Neither the fiscal intermediary nor the Board has the authority to declare regulations invalid.").

does not have jurisdiction to review these claims because they seek judicial review of non-final agency decisions—the FI's overpayment determinations. Plaintiffs concede that the FI's determinations are not final decisions of the agency, but argue that this Court has jurisdiction to review the FI's determinations pursuant to Section 1395oo(f)(1). Because this Court has already determined that Section 1395oo(f)(1) is not applicable to this case, Counts I and II are dismissed.[7]

## VI. CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment (Dkt. No. 20) and STRIKES as moot Plaintiffs' Motion for Summary Judgment (Dkt. No. 24). The five consolidated cases (Case Nos. 09–cv–02118, 09–cv–02119, 09–cv–00291, 09–cv–00292, and 09–cv–00293) are DISMISSED.

7. Furthermore, while this Court will not reach the merits of the meaning of the Settlement Agreement between Sun and CMS, what is clear is that the Honorable Mary F. Walrath, United States Bankruptcy Judge of the District of Delaware, retains jurisdiction over any claims and/or disputes arising from the Agreement. Therefore, the bankruptcy court is the only proper venue for resolving plaintiffs' challenges to the FI's overpayment determinations.