United States Court of Appeals,

Fifth Circuit.

No. 93-4621.

UNITED STATES of America, Plaintiff-Appellee,

v.

VERNON HOME HEALTH, INC., et al., Defendants,

Vernon Home Health Care Agency, Inc., Defendant-Appellant.

June 1, 1994.

Appeal from the United States District Court for the Eastern District of Texas.

Before KING and SMITH, Circuit Judges, and KAZEN,[*] District Judge.

JERRY E. SMITH, Circuit Judge:

Vernon Home Health Care Agency, Inc. ("Vernon II"), a purchaser of the corporate assets of a medicare provider, Vernon Home Health, Inc. ("Vernon I"), appeals a summary judgment in favor of the government for repayment of medicare overpayments made to Vernon I. Finding that the Social Security Act and federal regulations preempt state corporate law in this regard, we affirm.

I.

In March 1985, Vernon I, a Texas non-profit corporation, sold its assets to Vernon II, a Texas corporation. Under the terms of the purchase agreement, Vernon II paid $23,051.96 for the assets of Vernon I and assumed no liabilities.

Vernon II provides home health care to Medicare patients. Pursuant to the provisions of Medicare, a provider number is

---

[*]District Judge of the Southern District of Texas, sitting by designation.

1

assigned to each participant in the Medicare programs. Vernon I held Provider No. 45-7124, which was automatically transferred to Vernon II in October 1985.

The government filed a civil action in federal court alleging Medicare overpayments to Vernon I in the amount of $30,072.08 for the fiscal year ending June 30, 1984. The district court granted summary judgment, finding Vernon II jointly and severally liable with Vernon I for the overpayments.

## II.

### A.

We review a grant of summary judgment *de novo*. *Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir.1992). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Hanks,* 953 F.2d at 997.

We begin our determination by consulting the applicable substantive law to determine what facts and issues are material.

*King v. Chide,* 974 F.2d 653, 655-56 (5th Cir.1992). We then review the evidence relating to those issues, viewing the facts and inferences in the light most favorable to the non-movant. *Id.* If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

Both the government and Vernon II filed affidavits of expert witnesses. John Singer, Vernon II's expert witness, stated that he did not know of any policy that would obligate the purchaser of assets of a provider for overpayments made to the prior provider. He claimed that representatives of Health Care and Financing Administration had made statements to him that such a policy would seriously disrupt health care services.[1] John Eury, the government's expert, claimed in his affidavit that the purchaser of assets does become liable for overpayments made to the prior provider.

Vernon II claims that these conflicting affidavits create a genuine issue of material fact that cannot be resolved on summary judgment. We disagree. The affidavits express opinions about legal issues that we must resolve *de novo. International Ass'n of Machinists & Aerospace Workers v. Texas Steel Co.,* 538 F.2d 1116, 1119 (5th Cir.1976), *cert. denied,* 429 U.S. 1095, 97 S.Ct. 1110, 51

---

[1]Because we conclude that the interpretation of the statute and regulations is a legal issue that we must resolve at this stage, we do not reach the issue of whether the affidavit violates FED.R.CIV.P. 56(e), requiring affidavits to be made "on personal knowledge" and not on what the affiant "heard" from someone else. *See Leonard v. Dixie Well Serv. & Supply,* 828 F.2d 291, 295 (5th Cir.1987).

L.Ed.2d 542 (1977).

B.

Vernon II argues that the purchaser of corporate assets does not assume any liabilities under Texas corporate law because the imposition of liability would amount to a prohibited *de facto* merger. *See Mudgett v. Paxson Mach. Co.,* 709 S.W.2d 755, 758 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). And as Vernon II paid Vernon I a reasonable value for the assets, the sale is not subject to attack as a fraudulent transfer. TEX.BUS. & COM.CODE ANN. ch. 24. Thus, Vernon II concludes that the government is not entitled to recover against Vernon II for the overpayments.

Regardless of the result under state corporate law, federal law governs cases involving the rights of the United States arising under a nationwide federal program such as the Social Security Act. *United States v. Jon-T Chems.,* 768 F.2d 686, 690 n. 6 (5th Cir.1985) (citing *United States v. Kimbell Foods,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979)), *cert. denied,* 475 U.S. 1014, 106 S.Ct. 1194, 89 L.Ed.2d 309 (1986). The authority of the United States in relation to funds disbursed and the rights acquired by it in relation to those funds are not dependent upon state law. *Kimbell Foods,* 440 U.S. at 726, 99 S.Ct. at 1457. Moreover, when a dispute involves the validity of an agency action, the preemptive force of the action does not depend upon express congressional authorization to displace state law. *NCNB Texas Nat'l Bank v. Cowden,* 895 F.2d 1488, 1494 (5th Cir.1990). Instead, if Congress has authorized an administrator to exercise his discretion,

4

judicial review is limited to determining whether the administrator has exceeded his authority or acted arbitrarily. *Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta,* 458 U.S. 141, 154, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). *See First Gibraltar Bank, FSB v. Morales,* 19 F.3d 1032 (5th Cir.1994). Similarly, when the administrator promulgates regulations that preempt state law, the court's inquiry is limited to whether the regulations are reasonable, authorized, and consistent with the statute. *Id.*

The regulations were promulgated pursuant to the Social Security Act, and there is no question that they preempt state law in this area. Thus, the only question is whether the regulations unambiguously require the purchaser of a provider agreement to assume liability for Medicare overpayments made to the prior provider.

C.

The controlling regulation is Title 42 C.F.R. § 489.18(d) which requires: "An assigned agreement is subject to all applicable statutes and regulations and to the terms and conditions under which it was originally issued...." Thus, any purchase of assets that involves the assignment of the provider agreement is subject to the relevant statutory and regulatory conditions. One of these conditions is that adjustments are made for overpayments, pursuant to 42 U.S.C. § 1395g(a): "The Secretary shall periodically determine ... necessary adjustments on account of previously made overpayments...." *See Beverly Enters. v. Califano,* 460 F.Supp. 830 (D.D.C.1978) (holding purchaser of stock of

5

corporate owners of nursing home liable for medicare overpayments to corporation); *see also In re Metro. Hosp.,* 131 B.R. 283, 291 (E.D.Pa.1991) (holding that the Secretary's right to offset overpayments is mandated by 42 U.S.C. § 1395g, which serves as a limitation on the assignment in bankruptcy of the provider payments).

We also note that the Secretary's interpretation of the regulation and statute is eminently reasonable. By encompassing a system of interim payments on an estimated cost basis, subject to year-end accounting, the program ensures Medicare providers a steady flow of income sufficient to provide service. The assignee of a provider number is subject to this accounting procedure in order to provide continuous service.

The operative effect of section 498.18(d) is that all assigned provider agreements are subject to the rules and regulations of the Social Security Act. Thus, the state corporate law provisions recognizing Vernon II's right to purchase only assets is preempted by the federal law mandating that all assignments of provider agreements be subject to federal terms and conditions.

Vernon II could have chosen not to accept the automatic assignment of the provider agreement. Indeed, the government acknowledges that the case would be different if Vernon II had not assumed Vernon I's provider number. In that case, Vernon II would have had to apply as a new applicant to participate in the Medicare program. But Vernon II accepted the automatic assignment because it did not want a break in service while it awaited approval.

6

Provider No. 45-7124 was automatically assigned to Vernon II pursuant to 42 U.S.C. § 1395cc. By accepting that assignment, Vernon II agreed (albeit unknowingly) to accept the terms and conditions of the regulatory scheme. Thus, it is liable for the overpayments.

AFFIRMED.

7