# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-4324

_____

| | | |
|---|---|---|
| Deerbrook Pavilion, LLC, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Donna E. Shalala, Secretary, U.S. | * | |
| Department of Health & Human | * | |
| Services; United States Department | * | |
| of Health and Human Services; | * | |
| Nancy-Ann Min Deparle, | * | |
| Administrator, Health Care Financing | * | |
| Administration; Joe L. Tilghman, | * | |
| Regional Administrator, Health Care | * | |
| Financing Administration; Thomas W. | * | |
| Lenz, Associate Regional Administrator | * | |
| for Division of Medicaid and State | * | |
| Operations; Health Care Financing | * | |
| Administration; Gary J. Stangler, | * | |
| Director, MO Department of Social | * | |
| Services; Missouri Department of | * | |
| Social Services; Gregory J. Vadner, | * | |
| Director, MO Department of Medical | * | |
| Services; Missouri Division of Medical | * | |
| Services, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  September 15, 2000

Filed:   December 26, 2000
_____

Before HANSEN, HEANEY and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

HEANEY, Circuit Judge.

This case concerns successor liability for civil monetary penalties (CMPs) imposed by the Health Care Financing Administration (HCFA) on a skilled nursing facility (nursing home).  HCFA imposed CMPs on a nursing home and, after it was bought by Deerbrook Pavilion, L.L.C. (Deerbrook), HCFA sought to collect the penalties from Deerbrook.  Deerbrook then brought a complaint in the district court, alleging that the federal and state defendants lacked the authority to impose CMPs on it, and that doing so was a violation of due process.  The district court granted the defendant's motion to dismiss, see Deerbrook Pavilion, L.L.C. v. Shalala, No. 99-4179-CV-C-SOW-ECF (W.D. Mo., Nov. 4, 1999), and this appeal followed.  As we agree with the district court that HCFA has the authority to impose a civil monetary penalty on Deerbrook, we affirm the dismissal of the complaint.

## I.  BACKGROUND

In reviewing a Federal Rule of Civil Procedure 12(b)(6) dismissal, we must assume all of the facts alleged in the complaint to be true and affirm only if it is clear that no relief can be granted based on those allegations.  See Alexander v. Peffer, 993 F.2d 1348, 1349 (8th Cir. 1993).  We review a 12(b)(6) dismissal de novo.  See Hilton v. Pine Bluff Pub. Schools, 796 F.2d 230, 231 (8th Cir. 1986). On a motion to dismiss,

a court must primarily consider the allegations contained in the complaint, although matters of public and administrative record referenced in the complaint may also be taken into account.  See Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999); Sebastain v. United States, 185 F.3d 1368, 1374 (Fed. Cir. 1999).

Prior to Deerbrook's tenure as operator of the nursing home in question, government auditors discovered serious problems that threatened the health and safety of the facility's elderly and infirm residents.  The facility had numerous violations of basic sanitary standards and was also cited for neglect to the residents' basic needs. The auditors determined that these conditions put the residents' health in immediate jeopardy and imposed CMPs, which at one period amounted to $6,100 per day.  After a period from March 22, 1996 to September 5, 1996, in which surveys revealed repeated violations, the facility was brought into substantial compliance.  In total, there were $419,700 in CMPs assessed against the facility.

On January 10, 1997, Deerbrook began operating the facility.[1]  Instead of applying for a new medicare provider agreement, Deerbrook continued the agreement used by its predecessors.  HCFA sought to collect the CMPs from the original operator that had incurred the penalties, but that corporation was dissolved. HCFA then sought to collect the CMPs from Deerbrook.

Deerbrook then filed a complaint in district court asserting that HCFA did not have the authority to impose successor liability and that collection of CMPs against it would violate due process.  The federal defendants responded that unpaid CMPs

---

[1]Deerbrook represents that it is a separate entity from the original operator of the nursing home that accrued the CMPs.  The record reflects that Deerbrook's counsel also represented the original operator.  Although this overlapping representation might present some question of entanglement between the two organizations, for purposes of a motion to dismiss we must take the allegations of Deerbrook's complaint to be true.

"travel" with an existing provider agreement and that a new operator is subject to the regulatory history of the facility. The district court granted the federal defendants' motion to dismiss. On September 1, 1999, another entity, White Oak Terrace, L.L.C. (White Oak), assumed control of the facility.

## II.  PROCEDURAL ISSUES

### A.  Jurisdiction

We conclude that the district court had jurisdiction. As the district court held, Deerbrook's claims arose from the Fifth Amendment to the Constitution within the meaning of 28 U.S.C. § 1331, and the Administrative Procedure Act waives the government's sovereign immunity. See 5 U.S.C. § 702.

The federal defendants now argue that Deerbrook should have administratively contested the imposition of the CMPs on its predecessor before filing a complaint in the district court. Relying on Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1 (2000), they contend that Deerbrook's failure to seek agency review of the CMP deprived the district court of jurisdiction. However, in this litigation Deerbrook is not contesting whether the prior operator's conduct warranted a CMP, or that the amount of the CMP was incorrectly assessed. Rather, Deerbrook is contesting whether it is liable for a prior operator's CMP. These are two separate issues. It is questionable whether Deerbrook even had the standing (or the incentive) to intervene in contesting the imposition of CMPs on its predecessor. Therefore, the district court had jurisdiction to hear the case.

### B.  Mootness

Both the federal and state defendants argue that this appeal is moot because White Oak has now taken over the operation of the facility from Deerbrook.

A case is moot when it is "impossible for the court to grant any effectual relief whatever." Church of Scientology v. United States, 506 U.S. 9, 12 (1992) (internal quotation omitted). Deerbrook's complaint sought a declaratory judgment stating that collecting CMPs from a successor operator violated due process. Deerbrook also sought to enjoin the federal and state defendants from collecting the CMPs by withholding Medicare and Medicaid payments. Before the court had an opportunity to rule on the issue, the federal defendants withheld a $29,000 Medicare payment to satisfy the CMPs partially. Deerbrook filed a motion for a temporary restraining order citing the withholding of the $29,000.

It is clear the federal defendants withheld $29,000 in payments to satisfy the CMPs. Although the complaint itself does not ask for monetary damages, restitution of the $29,000 that was withheld was clearly contemplated in the motion for a temporary restraining order. Cf. Doe v. United States Dept. of Justice, 753 F.2d 1092, 1104 (D.C. Cir. 1985) (holding that claim should not be dismissed if some type of relief, not limited to relief asked for in the complaint, can be awarded). That White Oak now operates the facility does not change the fact that the federal defendants withheld $29,000 from Deerbrook on the basis of its predecessor's violations. The dispute has not become academic, as some form of meaningful relief is possible. See Church of Scientology, 506 U.S. at 12; In re Grand Jury Subpoenas, 78 F.3d 1307, 1311 (8th Cir. 1996).

As to the state defendants, there is no longer a live controversy. It is clear from the record that the state has never collected nor threatened to collect any CMPs from Deerbrook. As Deerbrook no longer operates the facility, and the $419,700 CMP was generated during the tenure of another operator, the state can no longer withhold any monetary payments to Deerbrook.

## III. SUCCESSOR LIABILITY

Although Deerbrook has claimed a number of Fifth Amendment violations, the central issue in this case is whether HCFA has the ability to impose CMPs on subsequent nursing home owners. We conclude that HCFA has such authority under the regulations.

Congress delegated the Department of Health and Human Services (HHS) broad authority regarding the imposition of remedies for statutory violations in skilled nursing facilities. The Secretary of HHS was delegated the authority to "specify criteria, as to when and how each of such remedies [including CMPs] is to be applied, the amounts of any fines, and the severity of each of the remedies." 42 U.S.C. § 1395i-3(h)(2)(B)(iii) (2000).

The regulations provide that when a change of ownership occurs, and the new owner assumes the existing provider agreement, the new owner assumes the agreement subject to its prior terms and conditions. "An assigned agreement is subject to all applicable statutes and regulations and to the terms and conditions under which it was originally issued including, but not limited to . . . (1) Any existing plan of correction. (2) Compliance with applicable health and safety standards . . . ." 42 C.F.R. § 489.18 (2000) (emphasis added). Just as an existing plan of correction carries over to the subsequent owner, so too do the CMPs when the new owner accepts transfer of the existing provider agreement. The agency's commentary on this issue is clear that a "facility's prior compliance history should be considered regardless of a change in ownership. A facility is purchased 'as is.' The new owner acquires the compliance history, good or bad, as well as the assets." 59 Fed. Reg. 56,174 (1994). The new owner can always apply for a new provider agreement.

As several commentators have pointed out, since 1994 HCFA has taken the view that there is successor liability in an effort to curb fraud and sham transactions in the

nursing home industry. See Paul R. De Muro & Esther R. Scherb, Steering Around Successor Liability in Health Care Transactions, 1129 PLI/Corp 23, 30 (June 1999); Greg Radinsky, How Health Care Attorneys Can Discern Vernon, Successor Liability and Settlement Issues, 44 St. Louis U.L.J. 113, 123-124 (2000). Specifically, the agency put forth a memorandum in 1994 that emphasized successor liability regarding plans of correction and CMPs. See HCFA Memorandum on Commerce Clearinghouse Report of Court Ruling Regarding Transfer of Provider Agreement, Anthony J. Tirone to Spencer K. Ericson (Dec. 29, 1994). An agency's interpretation of its own regulations is entitled to great deference. See Baker v. Heckler, 730 F.2d 1147, 1149 (8th Cir. 1984); Abbott-Northwestern Hosp., Inc. v. Schweiker, 698 F.2d 336, 340 (8th Cir. 1983).

The Fifth Circuit addressed a virtually identical issue in United States v. Vernon Home Health, Inc., 21 F.3d 693 (5th Cir. 1994). There, the new owner had entered into a contract to buy the assets, but not the liabilities, of the previous owners. The new owner assumed the existing provider agreement. The prior owner had received an overpayment from Medicare reimbursements. See id. at 694. The Fifth Circuit held that the new owner was jointly and severally liable with the old owner for the Medicare overpayments. The court reasoned that 42 C.F.R. § 489.18(d) imposed a requirement that the new owner was liable for any overpayment. See id. at 696.

Although Deerbrook attempts to distinguish Vernon on the basis that it involved an overpayment and this case involves CMPs, we do not view this distinction as significant. Both cases involve monetary liability for the new operator. Here, Deerbrook assumed the existing provider agreement under which its predecessors incurred CMPs. CMPs were imposed for noncompliance with quality of care standards, see 42 U.S.C. § 1395i-3(h)(2)(B)(ii) (2000), and an assigned agreement is taken subject to all the terms and conditions under which it was issued, see 42 C.F.R. § 489.18(d) (2000). Therefore, following the logic of Vernon, the district court

correctly held that Deerbrook was liable for the CMPs.  See Deerbrook Pavilion, No. 99-4179-CV-C-SOW-ECF, slip op. at 7.

We are unpersuaded by Deerbrook's argument that successor liability for CMPs frustrates statutory intent or constitutes bad public policy.  According to the federal defendants, HCFA imposes CMPs to ensure compliance with quality care standards. See 42 U.S.C. § 1395i-3(h)(2) (2000).  That goal would be frustrated if nursing home operators were able to avoid CMPs by engaging in sham transfers.  In addition, collection of CMPs from successors allows the replenishment of the Medicare trust funds when a previous operator dissolves or otherwise becomes judgment-proof, as in this case.

We are also not convinced by Deerbrook's argument that successor liability will lead some nursing homes to close for the lack of a buyer willing to pay the CMPs owed.  It appears to us that any amount of unpaid fines would ordinarily be reflected in a lower purchase price for the facility.  Surveys of facilities are matters of public record, see 42 U.S.C. § 1395i-3(g)(5)(A) (2000), and checking a facility's regulatory history is an important due diligence task.  Further, a new operator is free to apply for a new provider agreement for the facility, in which case it would not be liable for the prior owner's CMPs.  See Vernon, 21 F.3d at 696.

Because HCFA has the authority to impose CMPs on Deerbrook, there has been no statutory or constitutional violation.  We therefore affirm the opinion of the district court dismissing Deerbrook's complaint.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissents.

A true copy.
    Attest:
        CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.