**CAREGIVERS PLUS, INC. and Dynacorp Financial Strategies, Inc., Plaintiff,**

v.

**Tommy G. THOMPSON, et al., Defendants.**

**No. 3:03CV–0505AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

March 11, 2004.

Charles G F MacKelvie, MacKelvie & Associates, PC, Douglas A. Lindsay, Lewis Overbeck and Furman, Chicago, IL, for Plaintiff.

Clifford D. Johnson, U.S. Attorney's Office, South Bend, IN, for Defendants.

### MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This cause is before the Court on the Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or in the alternative, for Failure to State a Claim upon which Relief may be Granted pursuant to Rule 12(b)(6). The Plaintiffs brought this suit under the Administrative Procedures Act, which they allege gives this Court federal question jurisdiction under 28 U.S.C. § 1331, and under various state law theories, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.

At issue is a payment allegedly due to Caregivers Plus, Inc. ("Caregivers") pursuant to a Settlement Agreement with the Defendants' Intermediary, Palmetto, for services it rendered as a Medicare Provider. The Intermediary made this payment in the fall of 2001, but not to Caregivers. Instead, the Intermediary chose to pay Caregivers' successor corporation, Caregivers Great Lakes ("CGL"). The Plaintiffs have asked this Court to intervene under several theories and order the Intermediary to pay Caregivers the amount negotiated in the Settlement Agreement.

The Defendants argue, however, that the Plaintiffs do not get to make that argument in this court because they failed to follow the administrative procedures outlined in the Medicare Statute and implementing Regulations, as required before filing suit in federal court. The parties have fully briefed the issues and oral argument was held before this Court on December 12, 2003. For the reasons given

herein, the Court agrees with the Defendants that it lacks subject matter jurisdiction in this case. This Court has no choice but to **GRANT** the Defendants' Motion and **DISMISS** the case.

## I.  FACTUAL BACKGROUND

Plaintiff Caregivers is an Indiana Corporation that provided home health services to Medicare beneficiaries and other patients from January 1, 1992, until December 4, 1998. Pls' Mem. in Opp. at 3. In order to participate in the Medicare program as a provider, Caregivers obtained a provider number. Compl. at ¶ 3. During all or part of the years in question, Caregivers obtained financing from Plaintiff DynaCorp Financial Strategies, Inc. ("DFS"), a California Corporation that finances health care providers. Pls' Mem. in Opp. at 2.

On December 4, 1998, Caregivers' President transferred some of the Corporation's assets, including the provider number, to Marc Leestma for $20,000. Pl.'s Mem. in Opp. at 5. Subsequently, Leestma formed a new corporation entitled Caregivers Great Lakes ("CGL"), using the assets and the provider number purchased from Caregivers. Id. This transaction left Caregivers little more than a shell, with no means of repaying the DFS loans.

DFS, Leestma and CGL were unable to reach an agreement regarding the money owed to DFS, resulting in DFS filing suit in federal court against Leestma and CGL. Id. DFS claimed, among other things, that the transfer of Caregivers' assets to Leestma and then to CGL was fraudulent. Id. That suit went to trial before Judge Robert Miller in the Northern District of Indiana, in Case No. 3:99–CV–0569 RM.

On May 17, 2001, a jury returned a verdict in favor of Caregivers and DFS. Upon a renewed motion for judgment as a matter of law, Judge Miller upheld the jury's verdict on July 22, 2002, and awarded actual damages of $470,000, and punitive damages of $100,000 against CGL, and $800,000 against Leestma. Case No. 3:99–CV–0569 RM. The District Court found that the transfer of assets was fraudulent because it was made without receiving a reasonably equivalent value in exchange. Id.

At the time that Caregivers sold its assets to Marc Leestma, it had appeals pending before the Provider Reimbursement Review Board (the "Board") for the United States Department of Health and Human Services (HHS). Def.'s Mem. in Supp. at 7. Medicare reimbursement decisions are initially made by an "intermediary," a company under contract with HHS that is responsible for determining the amount of reimbursement due, and for making payments to the provider. Id. at 2. Providers who believe that they have been underpaid for services provided under Medicare may appeal to the Board, and in fact must appeal to this Board before seeking judicial review. Id.

Caregivers' appeals related to services provided in the years 1992 through 1995. Pl.'s Mem. in Opp. at 3. The local intermediary responsible for reimbursing Caregivers during those years was Defendants Blue Cross and Blue Shield Association and Blue Cross and Blue Shield of South Carolina d/b/a Palmetto Government Benefits Administrators (collectively "the Intermediary"). On December 28, 1999, Caregivers' President transferred Caregivers' interest in the proceeds of these appeals to DFS. Pl.'s Mem. in Opp. at 7. Therefore, DFS is the real party in interest in this case. DFS financed the appeals before the Board, this lawsuit, and the one in Judge Miller's court, in an attempt to recover money loaned to Caregivers that it lost because of the fraudulent transfer of Caregivers' assets. Id.

On April 23, 2001, while the Plaintiffs and the Intermediary were waiting for the Board to review their dispute, they reached a settlement agreement. The Intermediary agreed that Caregivers had been underpaid by the amount of $563,428.00 for the years 1992 through 1995. Pl.'s Mem. in Supp. at 4. The Intermediary agreed to pay Caregivers the settlement amount no later than August 7, 2001. Id. This agreement was binding on all parties, affiliated entities, successors or assigns. Id.

By the time the parties signed the settlement agreement, however, Caregivers assets had been fraudulently transferred, and CGL was in possession of the medicare provider number. The Intermediary treated this as a change of ownership, and in the fall of 2001, made the payment to CGL.

The Intermediary's decision to pay Caregivers' successor corporation was supported by a Memorandum dated January 6, 1999, which notes that when there is a transfer of ownership, all the liabilities of the old owner, including overpayments, should be transferred to the new owner when the new owner accepts assignment of the provider agreement. Def.'s Ex. A, citing *U.S. v. Vernon Home Health Inc.,* 21 F.3d 693 (5th Cir.1994). The January 6, 1999 Memorandum then states that it is therefore appropriate that underpayments also "go to the new owner in assigned agreement cases because, as recognized by the court in Vernon, the new owner has assumed the agreement." *Id.* By making the payment to the new owner, the Intermediary was able to offset overpayments previously made to CGL and reduce the amount owed, even though the Intermediary was aware that CGL was not entitled to the settlement funds.

After this, the Plaintiffs continued to negotiate with the Intermediary, and believed that it had reached an agreement that the Intermediary would pay the settlement amount due to Caregivers in the Fall of 2002. Pl.'s Mem. in Opp. at 5. The Plaintiffs never received the money, so sometime in December, 2002, the Plaintiffs requested that CMS intervene. Id. In a letter dated May 13, 2003, CMS responded that there was no basis under the Medicare statute and implementing regulations for the Intermediary to make such a payment to Caregivers. Def.'s Mem. in Supp. at 8. On July 11, 2003, Plaintiffs filed a Complaint initiating this lawsuit, claiming that CMS' decision violated Caregivers right to reimbursement, and that the Intermediary breached the settlement agreement.

## II. ANALYSIS

### A. Count I

■ The Defendants' first basis for dismissal of this case is lack of subject matter jurisdiction. The Defendants assert that what the Plaintiffs are actually seeking is reimbursement for services rendered under the Medicare Act, even if they call it something else. As such, it "arises under" the Medicare Act. Title 42 U.S.C. Section 405(h), which was incorporated into the Medicare Act, states that no action to recover on any claim arising under the Medicare laws can be brought under section 1331 of Title 28, United States Code. Therefore, the Defendants claim that this Court, being a court of limited jurisdiction, has no basis for subject matter jurisdiction over the Plaintiffs' claims.

The Plaintiffs assert, however, that jurisdiction is appropriate under Section 1331, this court's federal question jurisdiction, because in Count I, they are challenging a final agency decision under the Administrative Procedure Act, 5 U.S.C. § 552(f)(1). They claim that they availed themselves of the administrative review process outlined in the Act and implement-

ing regulations, and that the settlement agreement they seek to have enforced is a result of that process. They assert that jurisdiction is appropriate on Count II, the State Law claims, under section 1332, diversity jurisdiction.

The Medicare statute and implementing regulations set forth a procedure for disgruntled providers to appeal the reimbursement decisions of intermediaries. First, if the amount in controversy is more than $10,000, the provider may ask for a hearing before the review Board. 42 U.S.C. § 1395oo(a), and 42 C.F.R. § 405.1835. The Board may affirm, modify, or reverse the intermediary's determination. 42 U.S.C. § 1395oo(d). If the provider is dissatisfied with the Review Board's decision, it may ask for review by the CMS Administrator. 42 C.F.R. § 405.1875. Once the Administrator has issued a decision, it is considered the final decision of the Secretary, and the provider may obtain judicial review of this decision by commencing an action in a United States District Court within 60 days of receipt of notice of the decision. 42 U.S.C. § 1395oo(f)(1), and 42 C.F.R. § 405.1877(a)(e).

In this case, the provider, Caregivers, and the Intermediary, Palmetto, reached a Settlement Agreement on April 23, 2001, requiring the Intermediary to pay $563,428.00 to Caregivers for underpayments for the years 1992 through 1995. The Plaintiffs then notified the Board of the settlement, sent a copy of the agreement, and pursuant to agency procedures, their appeals were withdrawn. When the settlement amount was paid to CGL sometime in the fall of 2001, the Court will assume incorrectly for purposes of this motion, the Plaintiffs did not ask to have their appeals reinstated.

The Review Board publishes instructions for parties working on a settlement agreement, the Provider Reimbursement Review Board Instructions ("PRRB Instructions"). Def.'s Ex. B. The PRRB Instructions in effect at the time of the negotiations between the Plaintiffs and the Defendants explain that following settlement, the provider should withdraw its appeal and file the written agreement with the Board. Def.'s Mem. in Supp. at 6. By filing the agreement with the Board, the provider protects its right to reinstate the appeal if the Intermediary fails to pay according to the settlement agreement. Id.

The Plaintiffs allege that this provision does not provide an effective remedy in their situation because the Board lacks authority to enforce the settlement agreement. Pl.'s Letter dated Nov. 18, 2003. Plaintiffs cite to a recent PRRB decision in which the Board determined that it did not have jurisdiction over the question of which entity is the proper payee under the terms of a settlement agreement between the Providers and the Intermediary. Id. The United States Supreme Court has suggested that the statutory judicial review bar would not apply in cases in which its application would not simply channel review through the agency, but would mean no review at all. *See, Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000).

The Court agrees that the PRRB could not order enforcement of the Settlement Agreement, but that does not automatically mean that the Plaintiffs had no remedy. The remedy provided in the Regulations and Instructions told the Provider to file the settlement agreement with the Board, and if the Intermediary failed to pay according to the settlement agreement, the Provider should *reinstate the appeal* "within 180 days of the date of the Board's letter granting your withdrawal request." PRRB Instructions, Def.'s Ex. B, Part

I(C)(XI)(a). In other words, the Provider cannot ask for enforcement of the settlement agreement if the Intermediary fails to pay, but must go back to the Board for a hearing and decision by the Board.

In this case, Caregivers and DFS claim that they filed the settlement agreement with the Board with a letter dated May 16, 2001, informing the Board of the settlement. Plaintiffs have not, however, provided the Court with a date for the Board's letter granting their withdrawal request. Without that date, the Court cannot be certain that the Plaintiffs knew that the Intermediary paid the wrong entity in time to reinstate the appeal within 180 days. However, with a filing date of May 16, 2001, the payment due by August 2001, and the payment made sometime in the fall of 2001, it seems likely that Caregivers and DFS could have met the 180 day deadline to reinstate. Instead of following the course of action set forth in the PRRB Instructions, Plaintiffs state that they spent the next year "attempting to persuade Palmetto to change its mind." Pl.'s Mem. in Opp. at 8. That course of action ultimately proved futile, but the fact remains that Plaintiffs had a remedy, reinstating their appeals, had they chosen to use it.

The Plaintiffs claim, however, that they exhausted their administrative remedies by appealing and administratively resolving their dispute with the Intermediary through a settlement agreement. In addition, they claim that the letter from CMS dated May 13, 2003, denying relief constitutes a final agency decision, triggering the appeals provisions of the APA.

The United States Supreme Court determined, in 1977, that the Administrative Procedure Act does not contain an implied grant of subject matter jurisdiction for federal courts to review agency decisions, in *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). There-

fore, in order to have subject matter jurisdiction, the Plaintiffs must find another source. However, the law is clear, the only source available for this Court to review the reimbursement decisions of the Secretary is the provision for judicial review in the Medicare Act. As discussed above, the Plaintiffs failed to follow the provisions of that Act, including the implementing regulations and instructions.

The Plaintiffs in this case have not given the Review Board an opportunity to hold a full hearing on their claim that they were underpaid for the years 1992 through 1995. Had they reinstated their appeal and made their arguments before the Board, they would also have had an opportunity to challenge the 1999 Memorandum allowing reimbursement of underpayments to go to successor companies. Unfortunately, because the Plaintiffs failed to get a full agency review on their claim by following the PRRB Instructions and reinstating their appeals, this court lacks subject matter jurisdiction to hear the claim in Count I.

■ The Plaintiffs' other arguments do not help them overcome this jurisdictional bar. First the Plaintiffs argue that 42 U.S.C. § 405(h) does not apply because this is not a claim that "arises under" the Medicare laws. According to the Plaintiffs, they are merely seeking to enforce a settlement agreement, a simple contract. They claim they are not challenging the reimbursement decision, but merely the Intermediaries' decision to pay CGL.

The Supreme Court addressed this issue in 1994, in the case *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). In that case, the Supreme Court interpreted the "arises under" language to included cases where the Medicare Act provides "both the standing and the substantive basis for the presentation of the claims." *Heckler v. Ringer*, 466 U.S. 602,

615, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (citations omitted). The Seventh Circuit has also addressed this issue, in *Bodimetric Health Services v. Aetna Life & Casualty*, 903 F.2d 480, 487 (7th Cir.), *cert. denied*, 498 U.S. 1012, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990), and concluded that Congress intended the "arising under" language to be interpreted broadly. In *Bodimetric*, the Seventh Circuit concluded that Plaintiffs could not get around the statutory requirements by recharacterizing their claims under state and federal causes of action. *Id.* at 483, 487.

In this case, Caregivers was a Medicare provider, the Defendants run the Medicare program, and Caregivers' entitlement to reimbursement is based upon provisions of the Medicare Act. The heart of the Plaintiffs' complaint is that the Defendants violated their right to reimbursement under 42 U.S.C. § 1395(a), the Medicare Act. The Court finds that both the standing and the substantive basis for the Plaintiffs' claims rests squarely on the Medicare Act, and are therefore governed by 42 U.S.C. § 405(h).

The Plaintiffs attempt to distinguish this case from *Bodimetric* by saying that the benefit determination was concluded with the settlement agreement, and that they are now seeking to enforce a fully executed settlement agreement, so that § 405(h) does not bar their claim. The Court is not convinced. The settlement agreement was based on Plaintiffs' claims for reimbursement under the Medicare Act. It was produced through the administrative process set forth in the statute, which the Plaintiffs failed to complete. Like the plaintiffs in *Bodimetric*, these Plaintiffs' dispute is inextricably intertwined with the Intermediary's initial benefits determination, which they challenged as inadequate, and the Intermediary's subsequent decision to pay the settlement amount to Caregivers' successor corporation. These are exactly the kinds of decisions that must proceed, if at all, through the Medicare Acts exclusive procedure for review.

## B. Count II

The Plaintiffs' state law claims in Count II were brought under 28 U.S.C. § 1332, based on diversity jurisdiction. Section 1332 is not specifically mentioned under the jurisdictional bar of § 405(h), so the Court must consider whether it has subject matter jurisdiction over this claim.

The Seventh Circuit carefully considered this issue in *Bodimetric*. The Court first concluded that a provider should not be able to circumvent the intent of Congress to limit judicial review of Medicare claims by naming the intermediary as the defendant instead of the Secretary. Therefore, the Seventh Circuit held that suits against fiscal intermediaries are also governed by the terms of section 405(h), because the real party in interest is the Secretary. The Court then turned to whether section 405(h) applied to suits under section 1332 based on diversity, even though that provision is not specifically listed in section 405(h). After looking into the statutory history, the Seventh Circuit concluded that Congress did not intend to exclude claims of state law violations brought pursuant to diversity jurisdiction from the jurisdictional bar of section 405(h). Therefore, the Plaintiffs state law claims must also be dismissed for lack of subject matter jurisdiction.

In summary, these Plaintiffs had an opportunity to have their appeals reinstated and heard by the Review Board. However, because they had a favorable settlement agreement, they chose to pursue enforcement of the settlement agreement instead of reinstating their appeals. They are now bound by that decision. The failure of these Plaintiffs to complete the administrative process deprives this Court of subject matter jurisdiction to re-

view their claims either under the APA or under section 1332.

### III. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is **GRANTED.** The Plaintiffs' claims in both Count I and Count II are **DISMISSED** for lack of subject matter jurisdiction. Because of the Court's determination that it has no subject matter jurisdiction, the Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) is **DISMISSED** as moot.

**IT IS SO ORDERED.**