**CEDAR HILL MANOR, L.L.C. d/b/a Cedar Hill Manor, and Cedar Hill Terrace, L.L.C. d/b/a Cedar Hill Terrace, Appellants,**

v.

**DEPARTMENT OF SOCIAL SERVICES, DIVISION OF MEDICAL SERVICES, Respondent.**

No. WD 62782.

Missouri Court of Appeals, Western District.

July 13, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 31, 2004.

Application for Transfer Denied Oct. 26, 2004.

Harvey M. Tettlebaum, Jane C. Drummond, Co–Counsel, Jefferson City, MO, for appellant.

Curtis F. Thompson, Jefferson City, MO, for respondent.

Before LOWENSTEIN, P.J., HOWARD and HARDWICK, JJ.

HAROLD L. LOWENSTEIN, Judge.

This case involves the tortured financial history of a skilled nursing home in Cedar Hill, Missouri (for the sake of simplicity, hereinafter referred to as Cedar Hill). There have been various names for the nursing home as well as various licensed operators. The ultimate issue in this appeal hinges on an administrative determination that an unsatisfied civil penalty levied by a federal agency against an earlier operator can now be collected by the Missouri Department of Social Services, and the Missouri Division of Medical Services (hereinafter collectively referred to as "Department" or "Respondent"), from Cedar Hill, the present licensed operator of the home. The chronology of the agreed upon events leading to this suit are as follows:

March 1997– A Civil Money Penalty (CMP or Penalty) of $24,565 was assessed against the operator of Cedar Hills by the federal Center for Medicare and Medicaid Services (CMS). Authorized under 42 U.S.C. Section 1320(a), the Secretary of Health and Human Services, acting through CMS, is authorized to assess these sanctions for violation of federal regulations. In May of the same year, the operator appealed the assessment.

June 1998– The federal agency to which the appeal had been filed found that the appeal had been abandoned. No appeal from this decision was filed.

July 1998– The licensed operator of Cedars Nursing Center, Inc., being unable to meet its payroll obligations, was placed in receivership by the state of Missouri. A secured creditor intervened and unsuccessfully attempted to keep the receiver from using the home's pledged accounts receivable as security to secure funds to pay employees in order to keep the skilled nursing facility open. That action is recounted in *State v. Cedars Nursing Center, Inc.* 3 S.W.3d 803 (Mo.App.1999).

August 1998– Another operator took over Cedar Hills, followed in January 2000, by yet another operator. The appellants, Cedar Hill Manor and Cedar Hills Terrace, became the licensed operators in June 2001, when they were assigned the Medicaid provider agreement between the respondent, Missouri Department of Social Services (Department) and the previous provider.

August 2001– Respondent, the Missouri Department, sent a letter to Cedar Hill stating that CMS had requested

the state deduct the outstanding monetary Penalty from amounts owed to Cedar Hill from the Missouri Medicaid program. The letter relied on 42 C.F.R. Section 488.422(c) as authority for the respondent to collect the Penalty.

Cedar Hill filed a complaint with the Administrative Hearing Commission (AHC). In the complaint, Cedar Hill alleged that the set-off by CMS was improper because: (1) the agency did not have any *state* authority to collect penalties from a successor operator where the penalties were initially incurred by a previous operator; (2) the federal provision CMS intended to cite in the letter did not give CMS the authority to impose the penalties on Cedar Hill; (3) collecting the CMP from Cedar Hill violated its due process rights under the Fourteenth Amendment; [1] and (4) the set-off was beyond CMS's jurisdiction and, thus, void, arbitrary, capricious or unreasonable.

The parties filed cross-motions for summary determination. The AHC denied Cedar Hill's motion, but granted CMS's. The trial court then affirmed the AHC's decision, and Cedar Hill filed this appeal.

As stated previously, there is no question as to the underlying facts. On appeal, there is no question about the amount of the penalty as found by CMS, nor that it was validly entered against a prior licensee. Cedar Hill does not contest that the proper federal entity has the ability to collect the amount, but only contests that

any state agency, and particularly the respondent Department, has no authorization under federal or state laws and regulations to collect penalties from a successor state licensee-operator nursing home. Review here is of the decision of the Commission which allowed the Department to deduct the Penalty from Cedar Hill's federal reimbursement for care provided to Medicaid-eligible residents.

■■■ The court reviews the decision of the AHC as to the agency action under the seven questions outlined in Section 536.140.2, RSMo 2002.[2] Questions of law are for the independent judgment of the reviewing court. *State Bd. of Registration for the Healing Arts v. McDonagh*, 123 S.W.3d 146, 152 (Mo. banc 2003). Since constitutional issues may not be ruled upon by the AHC, but only by the courts, where such issues have been addressed by the circuit court (in this case, Cedar Hill's point three on a due process violation), this court reviews the judgment of the trial court. *Cocktail Fortune, Inc. v. Supervisor of Liquor Control,* 994 S.W.2d 955, 957 (Mo. banc 1999).

Cedar Hill raises numerous issues that will, for the sake of clarity, be separately treated as follows: (1) Federal regulations do not give a state authority to collect CMPs without state enabling legislation, and the only Missouri statute allowing the collection of a civil money penalty (neither the former and present version of Section 198.067), requires the action be brought in circuit court where the court is to deter-

---

1. It also cited the Fifth Amendment, but the Fifth Amendment only applies to the federal government.

2. 2. The inquiry may extend to a determination of whether the action of the agency: (1) Is in violation of constitutional provisions; (2) Is in excess of the statutory authority or jurisdiction of the agency;

(3) Is unsupported by competent and substantial evidence upon the whole record; (4) Is, for any other reason, unauthorized by law; (5) Is made upon unlawful procedure or without a fair trial; (6) Is arbitrary, capricious or unreasonable; (7) Involves an abuse of discretion.

mine the amount of the penalty. This all being so, Cedar Hill concludes that the Tenth Amendment precludes the federal government from imposing this liability, "on the states which state law does not affirmatively ... authorize"; (2) Even if Missouri law permits, there is no specific state regulation that allows the respondent to impose CMP liability on a nursing home "thrice removed" from the violator; (3) The respondent's scheme for assigning provider numbers violates the due process rights of the successors by nullifying any "opportunity for hearing on the validity of ..." CMPs; and (4) Allowing the result reached by the AHC and the trial court establishes a bad public policy of inhibiting investors from purchasing failing nursing homes.

## II. Analysis

### I. Tenth Amendment

Cedar Hill contends that the Tenth Amendment forbids CMS from imposing the set-off in accordance with 42 C.F.R. § 442.14(b)(6) and 42 C.F.R. § 488.442(c). The argument fails for the following reasons:

■ (1) A private party such as Cedar Hill does not have standing[3] to invoke the Tenth Amendment, at least where, as in this case, the private party's interests are not aligned with the state's. *Tenn. Elec. Power Co. v. T.V.A.,* 306 U.S. 118, 144, 59 S.Ct. 366, 83 L.Ed. 543 (1939); *Lomont v. O'Neill,* 285 F.3d 9, 13 n. 3 (D.C.Cir.2002) (also noting that lower courts must follow Supreme Court precedents until they are overruled by the Supreme Court); *Mountain States v. Costle,* 630 F.2d 754, 761 (10th Cir.1980); *Artichoke Joe's Cal.*

*Grand Casino v. Norton,* 278 F.Supp.2d 1174, 1181 (E.D.Cal.2003). *But see Dillard v. Baldwin County Comm'rs,* 225 F.3d 1271, 1276 (11th Cir.2000); *Gillespie v. City of Indianapolis,* 185 F.3d 693, 703–04 (7th Cir.1999).

■ (2) Cedar Hill's Tenth Amendment argument itself is unsound. The Tenth Amendment[4] prohibits the federal government from compelling states or state officials to enact or enforce federal regulatory schemes. *Printz v. United States,* 521 U.S. 898, 935, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997). Cedar Hill claims that neither 42 C.F.R. § 442.14(b)(6) nor 42 C.F.R. § 488.442(c) is applicable here. If so, then the federal statutes do not compel the states to do anything—and without any federal compulsion, the Tenth Amendment does not come into play. Similarly unavailing is Cedar Hill's observation that state administrative agencies' powers exclusively come from the General Assembly. *See Marston v. Juvenile Justice Ctr. of the Thirteenth Judicial Circuit,* 88 S.W.3d 534, 538–39 (Mo.App.2002). If state statutes or regulations did not authorize CMS's set-off, then the set-off was *ultra vires,* even if set-off was purportedly authorized by federal law. But that doesn't mean the federal law *compelled* CMS to make the set-off. (Nor is a violation of state law *ipso facto* a violation of the federal Constitution. *Snowden v. Hughes,* 321 U.S. 1, 11, 64 S.Ct. 397, 88 L.Ed. 497 (1944) ("Mere violation of a state statute does not infringe the federal Constitution.").) In fact, one of the regulations relied on by the trial court, 42 C.F.R. § 488.442(c) ("The amount of a penalty, when determined, *may* be deducted from any sum then or later owing by CMS or

---

**3.** The State has not raised the standing issue; however, standing is an issue that this court has a duty to raise *sua sponte. Berlin v. Pickett,* 100 S.W.3d 163, 167 (Mo.App.2003).

**4.** "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

the State to the facility." (emphasis added)), is permissive, not compulsory. In any event, the predicate of Cedar Hill's Tenth Amendment argument, that the State of Missouri did not authorize CMS to impose the set-off, is incorrect. *See infra.*

## II. Was the Set–Off Authorized by State Law?

■ Cedar Hill next contends that the set-off was not authorized by state law, because: (1) the state regulations supposedly authorizing the set-off, 13 C.S.R. 70–10.015(3)(I) and 13 C.S.R. 70–10.10.015(15)(A), exceed the Department's authority to promulgate and (2) these regulations were inapplicable. Cedar Hill is mistaken on both counts.

Both 13 C.S.R. 70–10.015(3)(I) and 13 C.S.R. 70–10.10.015(15)(A) authorized CMS to impose the set-off. 13 C.S.R. 70–10.015(3)(I) states:

> Regardless of changes in control or ownership for any facility certified for participation· in Medicaid, the division [of Medical Services] shall recover from that entity liabilities, sanctions and penalties pertaining to the Medicaid Program, regardless of when the services were rendered.

This regulation allows the Division of Medical Services to "recover ... sanctions and penalties pertaining to the Medicaid Program" (e.g., federal CMPs) from "any facility certified for participation in the Medicaid Program" (to wit, the nursing home). According to Cedar Hill, the phrase "that entity" in the regulation refers to the operator against whom a penalty was originally imposed. Cedar Hill has misread the regulation. "That entity" refers to the antecedent, "any facility certified for participation in Medicaid." And the introductory clause in the regulation ("Regardless of changes in control or ownership ...")

makes clear that "that entity" does not refer to the operator or owner.

13 C.S.R. 70–10.015(15)(A) states:

> In addition to the sanctions and penalties set forth in this regulation, the division [respondent] may also impose sanctions against a provider in accordance with 13 CSR 70–3.030 Sanctions for False or Fraudulent Claims for Title XIX Services, or any other sanction authorized by state or federal law or regulations.

"The terms impose and collect are not interchangeable," according to Cedar Hill. The term "impose" means "[t]o levy or exact (a tax or duty)," BLACK'S LAW DICTIONARY 759 (7th ed.1999)—in short, to collect. *See also Keller v. Marion County Ambulance Dist.,* 820 S.W.2d 301, 307 (Mo. banc 1991). Cedar Hill is also attacking a straw man. When Division of Medical Services withholds or suspends payments to a provider, it is clearly imposing a sanction. *See* 13 C.S.R. 70–3.030(3)(D) (listing "[s]uspension or withholding of payments to a provider" as a sanction that may be imposed for false or fraudulent claims). And yet it is a bit strange to say that A collects money from B by not paying B. Cedar Hill's claim that nothing in 13 C.S.R. 70–10.015(15)(A) allows respondent to collect *federal* penalties is belied by the text. 13 C.S.R. 70–10.015(15)(A) allows CMS to impose sanctions "authorized by state or federal law or regulations." And here the federal government did authorize the CMPs. True, federal law may not have authorized CMS to impose them, but 13 C.S.R. 70–10.015(15)(A) does not require the federal government's imprimatur. In any event, even if Cedar Hill's interpretation of 13 C.S.R. 70–10.015(15)(A) is correct, 13 C.S.R. 70–10.01.5(3)(I) authorizes the recovery of federal CMPs by withholding payments. *See supra.*

Are 13 C.S.R. 70–10.015(3)(I) and 13 C.S.R. 70–10.10.015(15)(A) valid regulations? Cedar Hill claims they aren't, because they exceed the scope of state law authorizing CMS to promulgate rules and regulations. Section 208.201.2 RSMo 2000, gives the Department "all powers and duties necessary to fully and effectively carry out the purposes assigned to it by law[.]" According to Cedar Hill, the only way 13 C.S.R. 70–10.015(3)(I) and 13 C.S.R. 70–10.10.015(15)(A) falls within the ambit of Section 208.201.2 is if one begs the question, "Does state law authorize these regulations?"

If "law" only meant "state law," Cedar Hill would be correct. But the term "law" includes both state and federal law. When the General Assembly wanted to specify "state law" or "federal law," it used the terms state law and federal law, respectively. For instance, in subsections 5(2) and 5(5) of this very statute (which has not been amended since it became law in 1987), the General Assembly used the terms "state law" and "federal law." § 208.201 *See also* § 208.153.1 (referring to "federal or state law"). That the General Assembly wanted the respondent to promulgate rules to help carry out federal law, not just state law, is revealed by subsection 5(5), which gives the Division of Medical Services the powers

> [t]o cooperate with the United States government in matters of mutual concern pertaining to any duties of the division of medical services or the department of social services, including the adoption of such methods of administration as are found by the United States government to be necessary for the efficient operation of state medical assistance plans required by federal law, and the modification or amendment of a

state medical assistance plan where required by federal law;

§ 208.201.5(5). Here, federal law authorized the actions CNS took. 42 C.F.R § 442.14(b)(6) states:

> An assigned agreement is subject to all applicable statutes and regulations and to the terms and conditions under which it was originally issued, including, but not limited to ... [c]ompliance with any additional requirements imposed by the Medicaid agency [CMS].

And 42 C.F.R. § 488.442(c) specifically provides that "[t]he amount of the penalty, when determined, may be deducted from any sum then or later owing by CMS or the State to the facility [the nursing home]." Thus, 13 C.S.R. 70–10.015(3)(I) and 13 C.S.R. 70–10.10.015(15)(A) did not exceed the scope of Section 208.201.2.[5]

Cedar Hill interjects a further argument by asserting the exclusive statutory remedy in Missouri for the recovery of civil money penalties is found in Section 198.067, RSMo 2000 which allows the Department to recover such penalties in circuit court. Suffice it to say, this statute covers only an action by the state to collect its imposed CMPs and does not thwart or limit the state's authorized effort to collect federally imposed CMPs.

## C. Due Process

Cedar Hill contends that the Due Process Clause forbids CMS from reducing Medicaid payments to it because of a fine imposed on the previous operator of the nursing home Cedar Hill now operates without first giving Cedar Hill a hearing. The whole point of hearing, however, is to resolve disputed issues of fact. Here, there are none. The only question is one of law: Is Cedar Hill bound by the earlier

---

**5.** It is thus unnecessary to decide whether Section 208.159 and 208.153 also authorized 13 C.S.R. 70–10.015(3)(I) and 13 C.S.R. 70–10.10.015(15)(A).

CMP? This point, which involves an issue of constitutional interpretation was presented only to the circuit court; therefore, review here is of the trial court's judgment.

■ The regulations cited above give CMS the power to reduce Cedar Hill's Medicaid payments by the amount of the penalty incurred by the predecessor. The penalty was imposed by a proper administrative procedure, the outcome of which is final, since the appeal was abandoned, and no appeal of this dismissal was taken. True, Cedar Hill never had an opportunity to argue that the penalty was improper, but, as the Department notes, Cedar Hill, as a privy of the previous owner, is bound by ordinary principles of res judicata—in this case, *collateral estoppel*—which apply to agency adjudications. And an administrative regulation, which Cedar Hill has not shown invalid, shifts the Penalty to Cedar Hill. Cedar Hill is barred from relitigating the issue. Giving Cedar Hill another chance to litigate the propriety of the CMP is not required by the Due Process Clause and would violate both settled principles of res judicata and administrative regulations. Cedar Hill cannot adequately explain how or why it should, at this date, be allowed to contest a sanction imposed on a now defunct predecessor that abandoned an appeal on the CMP, which appeal was formally dismissed on June 23, 1998. The Eighth Circuit's opinion in *Deerbrook Pavilion, L.L.C. v. Shalala*, 235 F.3d 1100 (8th Cir.2000), cuts against Cedar Hill's underlying argument on this issue that due process rights are infringed when there is no opportunity for a hearing granted to a successor on the validity of penalties imposed against a predecessor. Cedar Hill claims it is totally unfair for a licensing agency to require that a successor be assigned the prior operator's permit, and that such arrangement unfairly saddles a successor with the sins of a predecessor without benefit of a hearing. Citing, *United States v. Vernon Home Health, Inc.* 21 F.3d 693 (5th Cir.1994), The *Deerbrook* opinion said, "Here, Deerbrook assumed the existing provider agreement under which its predecessors incurred CMPs." 235 F.3d at 1104. The only factual distinction between the case at bar and *Deerbrook* is that the U.S. government was enforcing the penalty it imposed, whereas here, a state was assessing the federal penalty. And, as shown in the previous points, the legal authority for Respondent to reduce the amount of Medicaid money paid to Cedar Hill has been established.

## D. Public Policy

Cedar Hill makes a final argument that allowing CMS to deduct a federal penalty from Medicaid payments to nursing home facilities sets bad public policy, and discourages companies from becoming successors to abandoned or failing nursing homes. The General Assembly disagrees, and its word here is final.

■ It is probably good policy to impose successor liability in cases such as this one. Imposing successor liability might dissuade some would-be assignees from taking over nursing homes that owe Penalties, it is probable that to allow avoidance of final Penalties by assigning the license would be to encourage transfers from the sole underlying purpose to avoid payments of a valid government sanction. During a purchasing party's due diligence investigation, this information will come up, and that party will be able to demand a lower price to take into account its liability, should it become a successor.

The judgment is affirmed.

All concur.